NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 08-1511

———

GARY LATUSZEWSKI; JAMES ROGAN; REED BIGHAM

v.

VALIC FINANCIAL ADVISORS, INC.;
THE VARIABLE ANNUITY LIFE INSURANCE POLICY

v.

GARY LATUSZEWSKI; JAMES ROGAN; REED BIGHAM

Gary Latuszewski; James Rogan,
Appellants/Couterclaim Defendants

(Caption Amended in accordance with the Clerk's 6/23/08 Order)

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 03-cv-00540)
District Judge: Honorable Gary L. Lancaster

———

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2010

Before: SLOVITER, BARRY and SMITH, Circuit Judges

(Filed: September 15, 2010)

———

OPINION

———

SLOVITER, *Circuit Judge*.

Gary Latuszewski and James Rogan (the "Employees") appeal from the District Court's award of damages against them on a claim brought by their former employer, VALIC Financial Advisors, Inc.,[1] alleging breach of contract, breach of fiduciary duty, misappropriation of trade secrets, and tortious interference with contract. The Employees also argue that the District Court erred in declining to award them damages under VALIC's injunction bond after this court vacated part of the District Court's temporary injunction against them.

## I.

## Background

In 2002, VALIC, a company that sells and services financial products, required the Employees, each of whom had an employment contract with VALIC, to sign new employment contracts. The contracts included a non-compete covenant and a provision preventing the Employees from using VALIC trade secrets for any purpose other than their work. About a year after the Employees signed the new contracts, they resigned from VALIC to join a company created by Latuszewski called "North Atlantic Asset Management [("North Atlantic")], which . . . provide[d] financial and retirement planning

---

[1]Appellee The Variable Annuity Life Insurance Company owns one hundred percent of VALIC Financial Advisors, and the two companies will be referred to collectively in this Opinion as "VALIC."

services," in direct competition with VALIC. *Latuszewski v. Valic Fin. Advisors, Inc.*, No. 03-0540, 2007 WL 4462739, at *5 (W.D. Pa. Dec. 19, 2007) (*Latuszewski II*).

Some of the Employees' clients at VALIC moved their accounts to North Atlantic so that "more than $8 million in assets held by VALIC's former customers [was transferred] to North Atlantic in the first month after [the Employees] had left VALIC[,] [and i]n the three months after they had left, the total assets transferred rose to more than $10 million." *Id*. at *8. The Employees filed a declaratory judgment action in state court to resolve their contractual obligations under the non-compete and trade secrets provisions. VALIC removed the action to federal court, and filed counterclaims for breach of contract, tortious interference with contract, misappropriation of trade secrets, and breach of fiduciary duty. VALIC also moved for a preliminary injunction "to enforce the non-compete covenant and to stop [t]he Employees' misappropriation of trade secrets." *Id*.

The District Court issued an injunction, which in part required VALIC to post a $500,000 bond. The Employees appealed. This court "conclude[d] that the District Court's decision to grant a preliminary injunction to protect Appellees' trade secrets, to the extent it foreclosed Appellants from using trade secret information to solicit business and service clients, [was] based on a correct understanding of the applicable law and is supported by the record." *Latuszewski v. Valic Fin. Advisors, Inc.*, Nos. 04-1324, 04-1435, 04-2776, 2005 WL 1367809, at *1 (3d Cir. June 9, 2005) (*Latuszewski I*). We

3

also held that "the record does not support the preliminary injunction to the extent that . . . [the non-compete clause] can be read to foreclose Appellants from servicing former clients of VALIC who have become Appellants' clients without being solicited by them using information currently supplied by those clients." *Id*. at *2.

On remand, the District Court held a bench trial and found the Employees liable on each of VALIC's counterclaims. *Latuszewski II*, 2007 WL 4462739, at *1, *15-19. In essence, the District Court found that the Employees had used customer information from VALIC's proprietary databases to create a list of the Employees' clients with accounts that could easily be moved to a new firm – for example without incurring a penalty – and that the Employees contacted those clients and invited them to do so. The District Court additionally denied the Employees damages from the portion of the injunction this court vacated.

## II.

## Analysis[2]

VALIC argues that the "District Court's damages awards apply equally and independently to each of VALIC's four counterclaims." Appellees' Br. at 21. The Employees have not contested this proposition and we see no reason to hold otherwise.

[2]The District Court had jurisdiction under 28 U.S.C. § 1332, and this court has jurisdiction under 28 U.S.C. § 1291. "On the appeal of a bench trial, we review a district court's findings of fact for clear error and its conclusions of law de novo." *McCutcheon v. Am. Servicing Co.*, 560 F.3d 143, 147 (3d Cir. 2009).

4

Therefore, although VALIC argues that all of the counterclaims are supported by evidence and the law, we need only hold that any one should be affirmed.

In Pennsylvania, the elements of misappropriation of trade secrets are: "(1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret, in violation of that confidence; and (4) harm to the plaintiff." *Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 566 (3d Cir. 2003) (citing *Van Prods. Co. v. Gen. Welding & Fabricating Co.*, 213 A.2d 769, 775 (Pa. 1965)); Restatement (First) of Torts § 757 (1939).[3] The District Court held that the "customer lists, account balances, account activity, financial objectives, investment preferences, and transfer details, including penalties[,]" in VALIC's databases comprised trade secrets. *Latuszewski II*, 2007 WL 4462739, at *17. The Court reasoned that the information was "not known outside of VALIC's business, is protected against unnecessary disclosure by VALIC, is costly to develop and maintain, difficult to recreate or duplicate, and is of paramount value to VALIC's business." *Id.*[4]

---

[3]The District Court articulated the elements of a misappropriation of trade secrets claim under Pennsylvania law in a slightly different fashion. *See Latuszewski II*, 2007 WL 4462739, at *16. It is clear, however, from the text of the District Court's opinion and its citation to *Van Products Co. v. General Welding & Fabricating Co.*, 213 A.2d 769, 775 (Pa. 1965), that there was no error of law. *See Latuszewski II*, 2007 WL 4462739, at *16.

[4]In *Bimbo Bakeries USA, Inc. v. Botticella*, this court held on interlocutory appeal that under Pennsylvania law a trial court "has discretion to enjoin a defendant from beginning new employment if the facts of the case demonstrate a substantial threat

In the former appeal, we concluded that "the District Court properly held that the information described in the preliminary injunction constituted protectable trade secrets." *Latuszewski I*, 2005 WL 1367809, at *1. The description of the alleged trade secrets in the preliminary injunction order materially mirrors that used by the District Court to describe the information considered at trial. Although "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits," *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981), the Employees have pointed to nothing to convince us to deviate from our earlier decision.

The Employees do not argue that it was error for the District Court to find that the relevant information was entrusted to them in confidence. They do argue, however, that the District Court erred in finding that they used any trade secrets in a way that harmed

---

of trade secret misappropriation" of the defendant's former employer's trade secrets. No. 10-1510, 2010 WL 2902729, at *9 (3d Cir. July 27, 2010).

The holding and legal analysis in *Bimbo* are not directly instructive as to the issues here, nor do they cast doubt on our prior decision. We note, however, that *Bimbo* heavily referred to the Pennsylvania statute governing the misappropriation of trade secrets, whereas we, the District Court, and the parties refer primarily to Pennsylvania judicial decisions interpreting the common law tort of trade secret misappropriation. Although the statute "displaced Pennsylvania's common law tort for misappropriation of trade secrets . . . there is no indication that the statute effected a substantive shift in the definition of 'trade secret.'" *Id.* at *5 n.7 (quoting *Youtie v. Macy's Retail Holding, Inc.*, 626 F. Supp. 2d 511, 522 n.10 (E.D. Pa. 2009)).

6

VALIC. The District Court found that the Employees used trade secret customer information to "compil[e] lists, including mental lists, of those customers who would be targeted for transfer . . . ." *Latuszewski II*, 2007 WL 4462739, at *18.[5] The District Court also found that the Employees personally contacted at least some of those VALIC customers to invite them to move their money to North Atlantic, and that at least some of those individuals did so. These findings were not clearly erroneous, and it is evident that the Employees' actions constitute a breach of confidence that harmed VALIC.

The Employees argue further that because part of the injunction was vacated, they are entitled to recover on the injunction bond. The rule in the majority of circuits is that "a party is wrongfully enjoined when it had a right all along to do what it was enjoined from doing." *Global Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 22 (1st Cir. 2007). Here, the Employees were wrongfully enjoined only from servicing those clients who wished to transfer or did transfer their funds to North Atlantic, and who were not solicited through the use of VALIC's trade secrets. We review the District Court's denial of damages for abuse of discretion.

The Employees argue that there is a presumption in favor of recovery of damages from a wrongful injunction, but that even if that is so, the wrongfully enjoined party is

---

[5]"Whether th[e] information was embodied in written lists or committed to memory is . . . of no significance; in either case the data are entitled to protection." *Morgan's Home Equip. Corp. v. Martucci*, 136 A.2d 838, 843 (Pa. 1957).

7

only entitled to "provable damages." *Id.* at 23.[6] The District Court found that "the Employees did not sufficiently prove" that the vacated portion of the injunction "caused any damages to them," in part because the Employees "damages expert d[id] not acknowledge, or account for the fact that the court of appeals upheld the preliminary injunction to the extent that it proscribed the use of trade secrets to solicit and service former customers." *Latuszewski II*, 2007 WL 4462739, at *20.[7]

The Employees do not address the District Court's finding that the testimony of their damages expert was deficient. Instead, their primary response is to insist that there was no evidence that any of the customers who moved to North Atlantic did so through the misuse of trade secrets by the Employees. We have already rejected that assertion. Additionally, the District Court noted that although the "Employees testified an[ec]dotally about a few instances in which former customers casually approached them for services, which would be the only instance in which damages under the injunction bond may be proper, no details were given on those occurrences." *Id.* at *21. More specifically, the

[6]We note that at least some of those courts that have adopted a presumption of damages employ a more stringent abuse of discretion review. *See, e.g.*, *Alabama ex rel. Siegelman v. U.S. E.P.A.*, 925 F.2d 385, 389-90 (11th Cir. 1991) (prevailing party entitled to damages on injunction bond unless "good reason" exists (quoting *Coyne-Delany Co. v. Capital Dev. Bd. of Ill.*, 717 F.2d 385, 391 (7th Cir. 1983)). The Employees' appeal fails under either standard.

[7]The District Court also addressed other deficiencies in the expert's damages assessment that the Employees do not counter. *See Latuszewski II*, 2007 WL 4462739, at *20.

8

District Court noted that the Employees provided "no information on the type or size of the account that was lost in such an instance, and the type of commission that would have been paid on it." *Id*. The Employees cite to no record evidence that refutes those District Court findings.

Although proof of damages on an injunction bond "need not . . . be to a mathematical certainty[,]" *Global Naps*, 489 F.3d at 24, a damages award cannot be speculative, 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2973 (2d ed. 2010) ("A wrongfully enjoined defendant must establish what damages were proximately caused by the erroneously issued injunction in order to recover and the alleged damages cannot be speculative."). The Employees' failure to present sufficient and particularized evidence as to the extent, if any, to which they actually suffered damages as a result of the vacated portion of the injunction is dispositive.[8]

**III.**

---

[8]The Employees' reliance on cases such as *Sprint Commc'ns Co. v. CAT Commc'ns Int'l, Inc.*, 335 F.3d 235, 239-40 (3d Cir. 2003), for the proposition that the face amount of an injunction bond constitutes an agreement between the parties about the amount of damages that will be caused by an improper injunction is misplaced. Those cases primarily address the issue that an injunction bond *limits* the liability of the party seeking the injunction, a different issue than that presented here. Moreover, the injunction here was only partially vacated, vitiating any supposed accord as to the predicted damages.

## Conclusion

For the above stated reasons, we will affirm the judgment of the District Court.